UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GARRET HOLT BERGERON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2144** |
| **TERREBONNE PARISH SHERIFF'S DEPARTMENT, ET AL.** | **SECTION: "G"(3)** |

## REPORT AND RECOMMENDATION

Twenty inmates at the Terrebonne Parish Criminal Justice Complex joined together to file this civil action pursuant to 42 U.S.C. § 1983. In this lawsuit, the plaintiffs challenged the adequacy of the jail's response to the COVID-19 pandemic.

The claims of seven of those inmates were previously dismissed in their entirety. Specifically: The claims of Seth Lionel Bilbo, Juan Kieth Johnson, Lakeem Nolan, Lee A. Ruffin, Albert Stadium, and Dixon Adrian Vega-Ortiz were dismissed for failure to prosecute because those plaintiffs failed to comply with the Court's orders that they either pay the required filing fee or submit applications to proceed as paupers.[1] The claims of Norlan Alexis Ruiz-Perez were then dismissed without prejudice for failure to prosecute because he failed to meet his obligation to keep the Court apprised of his current address and, as a result, his whereabouts were unknown.[2]

The remaining thirteen plaintiffs are Garret Holt Bergeron, Derek Bergeron, Lloyd J. Voison, Jr., Jacolby Ronija Harris, Sr., Shawn David Shearer, Noel Durkins, Zachary Davis, Patrick Ryan Ledet, Dale E. Williams, Ferdinand Mathieu, Ellis Duplantis, Gabriel Mathew

---

[1] Rec. Doc. 71.
[2] Rec. Doc. 80.

Savoie, and Victor O. Jones. Those plaintiffs' claims against the Governor of Louisiana, the Secretary of the Louisiana Department of Public Safety and Corrections, and the Terrebonne Parish Sheriff's Department have already been dismissed with prejudice as frivolous and/or failing to state a claim on which relief may be granted.[3] Therefore, the only claims from the original complaint which currently remain pending are their claims against the Terrebonne Parish President, the Terrebonne Parish Sheriff, and the Warden of the Terrebonne Parish Criminal Justice Complex.

As to their claims against the Terrebonne Parish President, a prior Report and Recommendation in this matter noted that he was an improper defendant; however, as the result of an inadvertent error, that Report and Recommendation failed to formally recommend that those claims be dismissed. That recommendation is now formally made for the reasons previously noted.[4]

As to the remaining plaintiffs' claims against the Sheriff and the Warden, the Report and Recommendation noted that those individuals could be proper defendants **if** (1) they were

---

[3] Id.
[4] The Report and Recommendation, which was adopted by the United States District Judge, explained:

> The Terrebonne Parish President, who has also been named as a defendant herein, is likewise an improper defendant. While it is true that a parish governing authority bears some measure of responsibility for its parish jail, that role is limited to the *financing and physical maintenance* of the jail; the governing authority plays no role in the day-to-day *operation* of the parish jail. See Arce v. Louisiana, 226 F. Supp. 3d 643, 649 (E.D. La. 2016); Fairley, 294 F. App'x at 812; Galo, 2006 WL 2860851 at *2; see also Louisiana Rev. Stat. Ann. §§ 15:702 ("The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons.") and 33:4715 ("The police jury of each parish shall provide … a good and sufficient jail …."). Because the claims asserted by the plaintiffs in the instant case do not concern the funding or physical maintenance of the TPCJC, neither the parish governing authority nor, by extension, the parish president would be a proper defendant with respect to those claims. See Corteaux v. Larpenter, Civ. Action No. 19-13173, 2020 WL 2771755, at *6-7 (E.D. La. Apr. 27, 2020), adopted, 2020 WL 2769877 (E.D. La. May 28, 2020).

Rec. Doc. 77, p. 7.

**personally involved** in the actions and inactions alleged in the complaint,[5] (2) the purported violations **resulted from their failure to train or supervise** their subordinates,[6] or (3) they were **policymakers** and the purported violations **resulted from one or more of their policies or customs**.[7] Although the allegations asserted in the original complaint failed to adequately allege liability on any of those bases, the *pro se* plaintiffs were nevertheless given until April 9, 2021, to file an amended complaint which both (1) properly identified the unidentified Sheriff and Warden and (2) set forth adequate factual allegations to state a plausible claim or claims against those defendants.[8]

Of those thirteen remaining plaintiffs, the following twelve did not avail themselves of the opportunity to file an amended complaint and, in fact, took no action whatsoever in response the Court's order: Garret Holt Bergeron; Derek Bergeron; Lloyd J. Voison, Jr.; Jacolby Ronija Harris, Sr.; Shawn David Shearer; Noel Durkins; Zachary Davis; Patrick Ryan Ledet; Dale E. Williams; Ferdinand Mathieu; Ellis Duplantis; and Gabriel Mathew Savoie. Because those plaintiffs previously failed to state a plausible claim or claims against the Sheriff or the Warden for the

---

[5] See, e.g., Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.")

[6] See, e.g., Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001) ("A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.").

[7] "The Supreme Court has stated that suits against government actors in their official capacity simply represent an alternative way of seeking relief against the entity of which an officer is an agent." Clark v. Thibodaux City, 787 F. App'x 198, 202 (5th Cir. 2019). Accordingly, a court treats an official-capacity claim as one against the governmental entity the official serves, and such claims therefore require that the alleged violation resulted from a policy of custom of the defendant. Id. Moreover, under this theory of liability, a plaintiff must identify that policy or custom. See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003); Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel, 2009 WL 5125465, at *3.

[8] Rec. Doc. 80, p. 2. "Generally, … a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." Brewster v. Dretke, 587 F.3d 764, 768-69 (5th Cir. 2009).

reasons already explained, and because they have not availed themselves of the opportunity afforded them by the Court to file an amended complaint, the claims of those twelve plaintiffs against the Sheriff and Warden should now be dismissed.

**If** the foregoing recommendations are adopted, then **all** claims asserted by those twelve plaintiffs will have been dismissed. That would then leave the claims of only one plaintiff: Victor O. Jones, the only inmate to file an amended complaint.[9]

In his amended complaint, Jones asserted a variety of claims against the following six defendants: Major Stephen Bergeron; Rhonda Ledet; Mitch Dupre; Richard Neal; Gordon Dove; and S. Schwausch. However, for the following reasons, the Court should dismiss those claims pursuant to its screening authority.

---

[9] Rec. Doc. 83. The entry on the Court's docket sheet indicates that the amended complaint was filed by Garret Holt Bergeron. That is incorrect. The amended complaint was clearly filed by **Jones**, in that he completed the certificate of service, see id. p. 83, and it is his grievances which are attached to the amended complaint, see id. at pp. 19-26.

Moreover, although Jones appears to try to assert not only his own claims but also the claims of the other plaintiffs, he may not do so. This is not a class action, Jones is not a class representative, and an inmate may only assert claims on his own behalf. As the United States Tenth Circuit Court of Appeals has noted:

> Under Rule 23(a)(4) [of the Federal Rules of Civil Procedure], a class representative must "fairly and adequately protect the interests of the class." A litigant may bring his own claims to federal court without counsel, but not the claims of others. This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others.

Fymbo v. State Farm Fire & Casualty Co., 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation marks and citations omitted); accord Powers v. Clay, C.A. No. V-11-051, 2011 WL 6130929, at *3 (S.D. Tex. Dec. 8, 2011); Wetzel v. Strain, Civ. Action No. 09-7633, 2009 WL 5064445, at *1 (E.D. La. Dec. 16, 2009); Luna v. Kliebert, Civ. Action No. 09-3853, 2009 WL 2175773, at *1 n.1 (E.D. La. Jul. 17, 2009), aff'd, 368 F. App'x 500 (5th Cir. 2010); Sosa v. Strain, Civ. Action No. 069040, 2007 WL 1521441, at *7 (E.D. La. May 22, 2007). A *pro se* plaintiff's tenacity and zeal "are no substitute for the skill and experience which are needed to prosecute an action on behalf of a class." MacKenzie v. Local 624, International Union of Operating Engineers, 472 F. Supp. 1025, 1033 (N.D. Miss. 1979); accord Luna, 2009 WL 2175773, at *1 n.1; Sosa, 2007 WL 1521441, at *7.

**Nevertheless, even if the amended complaint were deemed to have been jointly filed on behalf of all thirteen of the remaining plaintiffs, the outcome would not change. For the reasons explained *infra*, all of the claims asserted in the amended complaint should be dismissed.**

Jones filed this civil action *in forma pauperis*.[10] Concerning such actions, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because Jones is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the

---

[10] Rec. Docs. 7 and 23.

unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Although broadly construing Jones' amended complaint,[11] the undersigned recommends that, for the following reasons, the federal civil rights claims asserted therein be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

Jones first complains that Bergeron, Ledet, Dupre, and Schwaush "are all a part of the chain of command that have responded and rejected every grievance that the plaintiffs has sought relief for through the A.R.P. process, but to no avail."[12] Even if that is true, it does not serve as a valid basis for liability, because an inmate has no constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

Jones next complains:

> The defendants are directly liable for not adjusting the practices, policies, procedures, and customs of the day to day operations @ T.P.C.J.C. to assure that

---

[11] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).
[12] Rec. Doc. 83, p. 4.

> the plaintiffs and all of the inmates entrusted to their care, are always protected and safe from any and all potential hurt, harm or danger that could possibly happen while in their custody.[13]

Again, even if that is true, it is not a constitutional violation. "[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). However, only reasonable – not absolute – protection is required. See, e.g., Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *6 (E.D. La. May 19, 2010) ("[P]laintiff seems to believe that prison officials have a constitutional duty to guarantee his absolute safety. They most assuredly have no such obligation. On the contrary, the Eighth Amendment mandates only 'reasonable' safety in prisons."), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). As the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a **substantial risk** of **serious harm** and that prison officials were **deliberately indifferent** to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (emphasis added; citations and internal quotation marks omitted). Therefore, both "[a]ctual knowledge and appreciation of the risk are required." Smith v. Jaramillo, 394 F. App'x 183, 185 (5th Cir. 2010). Further, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability

---

[13] Id.

if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

Accordingly, "[d]eliberate indifference is an extremely high standard to meet." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Further, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008). Lastly, and perhaps most importantly: "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. To reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.'" Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 420 (5th Cir. 2017) (citation and quotation marks omitted).

Here, Jones' vague allegation that the defendants have failed to ensure that inmates "are always protected and safe from any and all potential hurt, harm or danger" falls far short of stating a nonfrivolous claim, given that it fails to adequately allege that the harm at issue was "serious" and the risk "substantial," much less that the defendants' actions or inactions rose to the level of "deliberate indifference."

Jones also complains:

> These defendants are not working in confederation with the court or the state @ 32nd Judicial District in the Parish of Terrebonne too continuously release nonviolent offenders who are not a danger to the public or a potential flight risk, offenders who are deemed too be highly at risk for contracting the COVID-19 virus for pre existing conditions ….[14]

---

[14] Rec. Doc. 83, p. 5.

Again, even if that is true, it is not a constitutional violation because it misconstrues the role of the defendants. The role of penal officials is to humanely confine inmates, not to work to secure their release.

Jones further alleges that the defendants have not addressed the "continuous lack of sanitation," such as by "not providing daily cleaning supplies throughout the day to assure that all highly touched areas are constantly clean to help prevent the contraction and spread of COVID-19."[15] Admittedly, there is a point beyond which a jail cell's conditions are so filthy and unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in " 'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). Nevertheless, the mere fact that "a cell is unpleasant or less sanitary than one would wish for his home does not render the conditions unconstitutional." Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007).

It is true, of course, that sanitation has become even more necessary due to the ongoing pandemic. However, even with the pandemic, **constant** cleaning is not considered essential,[16] and experts have advised that the risk contracting COVID-19 from a contaminated surface is actually quite low and that other measures, such as promoting good hygiene practices, are of greater importance to prevent the spread of the disease.[17] Therefore, it simply cannot be said that the mere

---

[15] Id. at p. 6.
[16] See https://www.cdc.gov/coronavirus/2019-ncov/community/disinfecting-building-facility.html (Updated June 15, 2021) ("Cleaning with products containing soap or detergent reduces germs on surfaces by removing contaminants and decreases risk of infection from surfaces. When no people with confirmed or suspected COVID-19 are known to have been in a space, cleaning once a day is usually enough to sufficiently remove virus that may be on surfaces and help maintain a healthy facility.").
[17] Id. ("The virus that causes COVID-19 can land on surfaces. It's possible for people to become infected if they touch those surfaces and then touch their nose, mouth, or eyes. In most situations, the risk of infection from touching

fact that inmates are not continually provided with cleaning supplies "throughout the day" in order to ensure that "all highly touched areas are constantly clean" exposed them to a **substantial** risk or was so egregious as to rise to the level of deliberate indifference.

Jones next complains that the defendants are violating his rights by

> [n]ot providing clean water for inmate to drink (hot and cold), in opposed to forcing them too constantly drink from, prepare food from the exact same fountain the thirty (30) plus people within each dorm brush teeth, spit, blow noses, shave, and bleed, opening a door for too many opportunities for cross contamination and the contraction and spread of COVID-19 to accure.[18]

Obviously, "potable water is a basic human need and must be provided to inmates." Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015); accord Brooks v. Shinault, Civ. Action No. 6:18cv402, 2019 WL 2240713, at *3 (E.D. Tex. Apr. 16, 2019) ("An inmate is, of course, entitled to drinking water."), adopted, 2019 WL 2210696 (E.D. Tex. May 20, 2019); Planker v. Christie, Civ. Action No. 13-4464, 2015 WL 268847, at *26 (D.N.J. Jan. 21, 2015). However, Jones' allegations indicate that water **is** available to him throughout the day from the faucet in his cell, and such ready availability normally suffices to defeat a claim for the denial of adequate drinking water. See, e.g., Patin v. LeBlanc, Civ. Action No. 11-3071, 2012 WL 3109402, at *22 (E.D. La. May 18, 2012), adopted, 2012 WL 3109398 (E.D. La. July 31, 2012).

To the extent that Jones is attempting to argue that his case is different because the sink in question is insufficiently sanitary, that argument is rejected. Although a prisoner's right to water would be violated if the only water made available to him was **contaminated**, his "mere personal

---

a surface is low. The most reliable way to prevent infection from surfaces is to regularly wash hands or use hand sanitizer.").

[18] Rec. Doc. 83, p. 7.

belief that the water at [the prison] is contaminated is not sufficient to support a claim before th[e] Court." Williams v. LeBlanc, Civ. Action No. 14-00519, 2015 WL 539535, at *3 (M.D. La. Feb. 9, 2015).  Because Jones has no evidence showing that the water is actually unsafe (as opposed to being merely unpalatable), his claim fails.

Lastly, to the extent that Jones is complaining that the available drinking water is tepid, that fails to state constitutional violation.  The Constitution simply does not require that beverages be available at a certain temperature.  Young v. Gusman, Civ. Action No. 12-2877, 2013 WL 4648478, at *13 (E.D. La. Aug. 29, 2013) ("Plaintiff's complaints that the water available to drink comes straight from the faucet and is not cold enough ... fail[s] to state a constitutional claim."); Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003) ("To the extent that plaintiff is asserting that he is entitled to cold drinking water, he is incorrect.  The failure to provide cold water for drinking does not amount to a constitutional violation.").

Jones next alleges that the defendants are violating his rights by "[n]ot providing recreation for more than 180 days affording an opportunity for inmates to breath fresh air and allow them too absorb natural vitamins that can only be obtained from being in the sun."[19]  However, that is not unconstitutional.  "[N]either prisoners nor pretrial detainees have a constitutional right to outdoor exercise or recreation."  Callicutt v. Panola County Jail, No. 98-60193, 1999 WL 1095663, at *3 (5th Cir. Nov. 4, 1999) (citing Jones v. Diamond, 594 F.2d 997, 1012-13 (5th Cir. 1979)); accord Green v. Guidry, Civ. Action No. 19-12052, 2019 WL 5540959, at *5 (E.D. La. Oct. 4, 2019) ("The jurisprudence reflects that even severe restrictions on or complete denials of outdoor

---

[19] Id.

recreation have been found to be constitutional."), adopted, 2019 WL 5538065 (E.D. La. Oct. 25, 2019).

Jones also complains that "this administration is severely superseding the maximum amount of inmates allowed by law per squar footage too ensure that social distancing can at least be attempted to prevent the virus (COVID-19) from being contracted and spread."[20] The mere fact that inmates are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."); Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July 13, 2009); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007). While the pandemic has somewhat changed this calculus, and overcrowding should be avoided and social distancing encouraged, that is not always possible for penal institutions.[21] Therefore, the failure to employ such measures is not alone indicative of deliberate indifference. See, e.g., Swain v. Junior, 961 F.3d 1276, 1287 (11th Cir. 2020) ("[T]he district court erred in concluding that the defendants' inability to ensure adequate social distancing constituted deliberate indifference. The court stated no less than eight times in its order that adequate social distancing was 'not possible' or 'impossible.' … Failing to do the 'impossible' doesn't evince indifference,

---

[20] Id. at p. 8.
[21] See, e.g., https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (Updated June 9, 2021) (Prevention Practices for Incarcerated/Detained Persons: … Implement social distancing strategies to increase the physical space between incarcerated/detained persons (ideally 6 feet between all individuals, regardless of symptoms), and to minimize mixing of individuals from different housing units. Strategies will need to be tailored to the individual space in the facility and the needs of the population and staff. Not all strategies will be feasible in all facilities.").

let alone deliberate indifference."); Smith v. Jeffreys, No. 20-1421, 2021 WL 918057, at *2 (C.D. Ill. Mar. 10, 2021) ("It has been recognized the prison officials' … failure to adhere to social distancing does not satisfy either the subjective or objective component necessary for deliberate indifference."). In any event, "general allegations about a lack of social distancing … do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant risk of harm to plaintiff's health or safety." Mayfield v. Peissig, No. 20-cv-269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020), appeal dismissed, No. 20-1982, 2020 WL 7238281 (7th Cir. Aug. 12, 2020).

Jones next alleges that "the mere design of this facility 'will not' allow these defendants to properly quarantine new intakes. They (defendants) must place the inmates into general population in oppose too keeping them separated from each other at least the recommended fourteen (14) days."[22] As a preliminary matter, none of the named defendants are responsible for the design of the jail. Moreover, as one United States District Judge noted, quarantining new jail admissions is not always possible or, in and of itself, evidence of a constitutional violation:

> The CDC has recommended that new arrivals be screened for COVID-19 and, where possible, held in a separate space for fourteen days before being placed with other inmates. While comingling new intakes with other inmates may not be the ideal practice …, the challenges of managing this situation in a correctional setting are astronomical, and nothing in [plaintiff]'s complaint suggests that the defendants acted unreasonably.

Bodnar v. Lake County Jail, No. 2:20-CV-157, 2020 WL 1940742, at *3 (N.D. Ind. Apr. 22, 2020) (citation omitted).

Jones next complains:

---

[22] Rec. Doc. 83, pp. 8-9.

> [T]his administration continue to place inmates who have contracted the virus with people who have not even though so much is still too this day unknown about the virus, that parish jails must take extra precautions to protect inmates because they are dealing with people directly from the public street. For example, if an inmate have caught the virus, and no longer are testing positive, can the virus return to affect the body again. Thus, placing other inmates in hurt, harm, danger, or death.[23]

Jones is correct: much is still unknown about COVID-19; however, that actually cuts against his argument. If it were generally accepted that previously infected people posed a substantial risk of spreading the disease even after they were no longer testing positive, no longer experiencing fever, and their other symptoms were improving, then the defendants could perhaps be said to deliberately indifferent to a potential harm. However, that is not generally accepted; in fact, the opposite is thought to be true.[24] Likewise, if it were generally accepted that previously infected people were themselves at a substantial of reinfection, then, again, that might be indicative of deliberate indifference. But again, that premise is not generally accepted as true. Although reinfection is known to exist, there is no evidence that it is anything other than a rare occurrence.[25]

Lastly, with respect to these defendants, Jones complains:

> [T]hese defendants refuse to even offer tuburcolosis, crabs or lice testing to new intake. Neither do these defendants properly screen all inmates who are picked to work in the kitchen too prepare food for other inmates. The defendants do not assure through testing that these inmate kitchen workers are deemed "disease free" prior to putting them in position to prepare food.[26]

---

[23] Id. at p. 10.
[24] See Centers for Disease Control and Prevention, COVID-19: When You Can be Around Others (Updated March 12, 2021), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/end-home-isolation.html.
[25] See Centers for Disease Control and Prevention, COVID-19: Reinfection (Updated October 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html ("Cases of reinfection with COVID-19 have been reported, but remain rare."); see also Apoorva Mandavilli, Coronavirus Reinfections are Real but Very, Very Rare, N.Y. Times (Published October 13, 2020; Updated March 21, 2021), https://www.nytimes.com/2020/10/13/health/coronavirus-reinfection.html.
[26] Rec. Doc. 83, pp. 10-11.

However, Jones does not allege that he was physically harmed as a result of this failure, and, in any event, such routine, preventative testing – while perhaps advisable – is not constitutionally mandated. See, e.g., Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003).

Jones also asserts a variety of claims against Richard Neal (the jail's medical director) and Gordon Dove (the parish president). However, for the following reasons, those claims fare no better.

Jones first complains that Neal and Dove have not instituted "daily temperature checks, testing, and monitoring throughout the day."[27] Obviously, such measures would be commendable; however, it cannot be said that that the failure to employ them is indicative of deliberate indifference. As already indicated herein, administration of a jail is a monumentally difficult task, with penal officials facing a myriad of challenges and trying to meet those challenges with limited resources and staffing. Although penal officials are expected to aim high, they are not liable simply because they do not take every possible precaution or because they fail to achieve perfect results. Rather, they are expected to employ reasonable measures – and, at the very least, not be deliberately indifferent to the serious needs of those in their custody. A failure to employ "daily temperature checks, testing, and monitoring throughout the day" simply does not cross that impermissible line.

Jones next complains that Neal and Dove "refuse too offer inmates proper medical care at a hospital that is equipped and qualified to care for inmates once they have been found positive of

---

[27] Id. at p. 14.

the COVID-19 virus."[28] All inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). However, a decision to treat an inmate at the jail rather than to send him to an outside medical provider does not, even despite his disagreement with that decision, evince deliberate indifference. See Alfred v. Texas Department of Criminal Justice, 80 F. App'x 926, 927-28 (5th Cir. 2003); see also Fowler v. Hodge, 94 F. App'x 710, 713 (10th Cir. 2004); Russell v. Gusman, Civ. Action No. 10-1772, 2011 WL 2457925, at *4 (E.D. La. June 17, 2011) ("This Court notes that plaintiff disagreed in particular with the decision to treat him at the jail's medical department rather than to send him to the hospital. However, that disagreement does not make his claim actionable.... Simply put, a decision as to whether an inmate should be treated in the jail medical department rather than by outside medical providers is a matter of professional medical judgment."); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *4 (E.D. La. Feb. 22, 2010) ("Once he was incarcerated, [plaintiff's] primary source of medical care became the prison medical department, and it was then up to the prison doctor to decide whether outside care was needed. Such decisions are based on the doctor's professional judgment, and, as such, generally are not second-guessed in a federal civil rights action."). That is especially true here, given that not all persons who contract COVID-19 require hospitalization.[29]

---

[28] Id.
[29] See Centers for Disease Control and Prevention, COVID-19: Clinical Questions about COVID-19: Questions and Answers: Treatment and Management (Updated March 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Treatment-and-Management ("Not all patients with COVID-19 require hospital admission."); see

In any event, it must also be remembered that an inmate's medical care need not be "the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). On the contrary, the federal constitution does not even require that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

Jones also alleges that "[t]hese defendants has deliberately stopped recording and being transparent about the actual active cases of COVID-19 contracted @ T.P.C.J.C. ...."[30] However, even if that is true, it does not violate any protection guaranteed to Jones by the United States Constitution.

Jones next complains that "[t]hese defendants are only offering inmates 'Tylenol' once they test positive for the COVID-19 virus."[31] To the extent that Jones is suggesting that such over-the-counter medications are an inappropriate treatment for COVID symptoms, he offers no support

---

also Centers for Disease Control and Prevention, COVID-19: What to Do If You are Sick (Updated March 17, 2021), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html ("Most people with COVID-19 have mild illness and can recover at home without medical care.").
[30] Rec. Doc. 83, p. 15.
[31] Id.

for that contention, and the Centers for Disease Control's guidance is to the contrary.[32] Moreover, to the extent that Jones is complaining that he received no additional forms of treatment, he has not identified any enhanced treatments that were purportedly medically necessary (or even advisable) in his particular case.

Lastly, Jones complains that returning inmates are not quarantined after they have been "outside this facility for various reasons"[33] and that inmates who have previously tested positive for COVID-19 are housed with inmates who have not contracted the virus "even though so much is unknown about the virus."[34] Similar allegations concerning the lack of quarantine measures and the commingling of inmates have already been considered herein and found wanting for the reasons already explained. This reiteration of such allegations warrants no separate analysis; it is merely a change of defendants, not of the underlying substance of the claims.

## RECOMMENDATION

It is therefore **RECOMMENDED** that all of the remaining plaintiffs' claims from the original complaint be **DISMISSED**.

It is **FURTHER RECOMMENDED** that that all claims asserted by plaintiff Victor O. Jones in his amended complaint likewise be **DISMISSED**.

---

[32] See, e.g., Centers for Disease Control and Prevention, COVID-19: Treatments Your Healthcare Provider Might Recommend if You are Sick: Treatment Outside of the Hospital (Updated March 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html ("Your healthcare provider also may recommend the following to relieve symptoms and support your body's natural defenses. … Taking medications, like acetaminophen or ibuprofen, to reduce fever."); Centers for Disease Control and Prevention, COVID-19: What to Do If You are Sick (Updated March 17, 2021), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html ("Get rest and stay hydrated. Take over-the-counter medicines, such as acetaminophen, to help you feel better.").
[33] Rec. Doc. 83, p. 16.
[34] Id.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __12th__ day of July, 2021.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**